**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                   )
BUZZFEED, INC.,                    )
                                   )
    *Plaintiff*,                     )
                                   )
  v.                               )   Civil Action No. 19-0070 (TNM)
                                   )
U.S. DEPARTMENT OF JUSTICE,        )
                                   )
    *Defendant*.                     )
_____)


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


**Table of Contents**

**INTRODUCTION** ............................................................................................................... 5
**BACKGROUND** ................................................................................................................ 5
**STANDARD** ...................................................................................................................... 6
**ARGUMENT** ..................................................................................................................... 7
   *I.   The Department Properly Withheld Deliberative Information under Exemption 5.* ...... 8
   *II.  The Department Properly Withheld Personal Financial Information under
      Exemption 6.* ................................................................................................................ 11
   *III. No Reasonably Segregable Information May Be Released.* ........................................ 15
**CONCLUSION** ............................................................................................................... 16

**Table of Authorities**

5 C.F.R. § 2634.603 .................................................................................................................. 13

5 U.S.C. App. 4 § 101 ............................................................................................................... 13

5 U.S.C. App. § 105 .................................................................................................................. 13

5 U.S.C. § 552 ............................................................................................................... 8, 11, 15

*Am. Fed'n of Gov't Emps., Local 812 v. Broadcasting Bd. of Governors*,
    711 F. Supp. 2d 139 (D.D.C. 2010) ................................................................................. 13-14

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*
    ("AILA"), 830 F.3d 667 (D.C. Cir. 2016) ......................................................................... 11, 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................................ 6

*Armstrong v. Exec. Office of the President*,
    97 F.3d 575 (D.C. Cir. 1996) ................................................................................................ 15

*Associated Press v. DOD*,
    549 F.3d 62 (2d Cir. 2008) ................................................................................................... 13

*Atkinson v. FDIC, Civ. A.*
    No. 79-1113, 1980 WL 355660 (D.D.C. Feb. 13, 1980) ..................................................... 13

*Brayton v. Office of U.S. Trade Rep.*,
    641 F.3d 521 (D.C. Cir. 2011) ................................................................................................ 6

*Canaday v. U.S. Citizenship & Immigration Servs.*,
    545 F. Supp. 2d 113 (D.D.C. 2008) ...................................................................................... 14

*Canning v. Dep't of Justice*,
    567 F. Supp. 2d 104 (D.D.C. 2008) ...................................................................................... 15

*Carter v. Dep't of Commerce*,
    830 F.2d 388, 391 n.13 (D.C. Cir. 1987) ............................................................................. 13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................................ 6

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ..................................................................................... 8, 9, 11

*Conservation Force v. Jewell*,
    66 F. Supp.3d 46 (D.D.C. 2014) ...................................................................................... 14-15

*Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*,
    554 F.3d 1046 (D.C. Cir. 2009) ............................................................................................ 12

*Defenders of Wildlife v. U.S. Border Patrol*,
    623 F. Supp. 2d 83 (D.D.C. 2009) ....................................................................................... 6-7

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,

    532 U.S. 1 (2001) .................................................................................................... 8, 9

*DOJ v. Reporters Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ..................................................................................................... 12

Fed. R. Civ. P. 56 ................................................................................................................. 6

*Govt. Accountability Project v. U.S. Dep't of State*,
    699 F. Supp. 2d 97 (D.D.C. 2010) ............................................................................... 14

*Ground Saucer Watch, Inc. v. CIA*,
    692 F.2d 770 (D.C. Cir. 1981) ....................................................................................... 7

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ....................................................................................... 7

*Lepelletier v. FDIC*,
    164 F.3d 37 (D.C. Cir. 1999) ....................................................................................... 11

*Loving v. Dep't of Def.*,
    550 F.3d 32 (D.C. Cir. 2008) ......................................................................................... 8

*Mapother v. Dep't of Justice*,
    3 F.3d 1533 (D.C. Cir. 1993) ......................................................................................... 8

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) ..................................................................................... 7

*McKinley v. FDIC*,
    744 F. Supp. 2d (D.D.C. 2010) ................................................................................... 10

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ........................................................................... 9, 10, 15

*Media Research Ctr. v. U.S. Dep't of Justice*,
    818 F. Supp. 2d 131 (D.D.C. 2011) ........................................................................... 6, 7

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ....................................................................................... 7

*Multi Ag Media LLC v. Dep't of Agric.*,
    515 F.3d 1224 (D.C. Cir. 2008) ................................................................................... 12

*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ....................................................................................... 12

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) ..................................................................................... 12

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ....................................................................................................... 8

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ....................................................................................... 7

*Public Citizen, Inc. v. Resolution Trust Corp.*, Civ. A.
   No. 92-0010, 1993 WL 1617868 (D.D.C. Mar. 19, 1993) ................................................... 13

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ............................................................................... 7, 10, 11

*Salas v. Office of the Inspector Gen.*,
   577 F. Supp. 2d 105 (D.D.C. 2008) ................................................................................ 13

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ....................................................................................... 15

*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) ........................................................................................... 9

*U.S. Dep't of State v. Ray*,
   502 U.S. 164 (1991) ......................................................................................................... 11

*U.S. Dep't of State v. Wash. Post Co.*,
   456 U.S. 595 (1982) ......................................................................................................... 11

*Wash. v. U.S. Dep't of Labor*,
   478 F. Supp. 2d 77 (D.D.C. 2007) ..................................................................................... 7

## INTRODUCTION

Plaintiff BuzzFeed, Inc. ("BuzzFeed") brought this suit claiming that Defendant, the Department of Justice ("DOJ"), had not responded to two requests for records under the Freedom of Information Act ("FOIA"). DOJ has now produced those records and, through dialogue and good-faith efforts at resolution, the parties have narrowed this case to whether DOJ's Justice Management Division ("JMD") properly withheld draft uncertified financial disclosure forms of former Acting Attorney General Matthew Whitaker pursuant to FOIA Exemptions 5 and 6. *See* Joint Status Report, ECF No 16, at 1. JMD's withholdings fall squarely within FOIA exemptions and summary judgment is appropriate.

## BACKGROUND

On November 20, 2018, BuzzFeed submitted a FOIA request to DOJ for "President Donald J. Trump's memorandum directing Matthew Whitaker to perform the duties and functions of the office of attorney general." *See* Compl., ECF No. 1, ¶ 22. On November 21, 2018, BuzzFeed submitted another FOIA request seeking "[a]ll versions, including original and amended versions, of an Office of Government Ethics (OGE) Form 278e submitted by Acting Attorney General Matthew Whitaker since October 1, 2017." *Id.* ¶ 34. That request also sought all versions of the OGE 278-T. *Id.* ¶ 35; *See* Declaration of Cynthia Shaw ¶ 4.

On November 20, 2018, DOJ's Office of Public Affairs released Mr. Whitaker's final, certified OGC-278 forms. Compl. ¶ 32. On November 30, 2018, DOJ's Office of Information Policy ("OIP") acknowledged BuzzFeed's November 20, 2018, FOIA request and granted expedited processing. *Id.* ¶ 24. On November 26, 2018, DOJ's Justice Management Division ("JMD") acknowledged BuzzFeed's November 21, 2019, FOIA request. On January 11, 2019, BuzzFeed filed the instant complaint, alleging that DOJ had yet to produce records. *Id.* ¶ 1.

On February 25, 2019, OIP produced all requested records to BuzzFeed in full. *See* Statement of Material Facts ("SOMF") ¶ 3. After conducting a search, JMD responded to BuzzFeed on March 20, 2019, noting that Plaintiff already received the certified versions of the OGE Form 278e, and informing BuzzFeed that Matthew Whitaker did not file an OGE 278-T during his tenure at DOJ. *Id.* ¶ 9. Further, JMD notified BuzzFeed that JMD had withheld 14 draft OGE-278e reports (seven annual and seven new entrant) under FOIA Exemptions 5 and 6. *Id.* The challenged withholdings were made to protect the deliberative process under Exemption 5 and the privacy interests in personal financial information under Exemption 6. *Id.* As the withholdings are proper under the FOIA, DOJ now seeks summary judgment.

## STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v.*

6

*U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

**ARGUMENT**

DOJ has released all non-exempt responsive records to BuzzFeed, and the parties have conferred about the scope of those releases. As a result of those discussions, only two issues remain for the Court to decide: (1) whether DOJ's Justice Management Division ("JMD")

properly withheld deliberative information under Exemption 5 and (2) whether JMD properly withheld personal financial information under Exemption 6. As set forth below, DOJ carefully reviewed all of the material in question and withheld only information that is properly withheld as deliberative or pertaining to personal financial information. No nonexempt segregable information can be released. DOJ is therefore entitled to summary judgment.

I. *The Department Properly Withheld Deliberative Information under Exemption 5.*

BuzzFeed challenges DOJ's withholding of certain deliberative information covered by FOIA Exemption 5. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents that would be privileged in the context of civil discovery, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

"The deliberative process privilege protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). The privilege applies to records that are both "predecisional" and "deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). As used in the context of the privilege, "predecisional" material is that "generated before the adoption of agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Material is "deliberative" if it "reflects the give-and-take of the consultative process." *Id.* The privilege "covers

recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.*

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," and the privilege's "object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Klamath Water*, 532 U.S. at 8–9 (citations omitted); *see also Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) ("[T]he deliberative process privilege . . . reflect[s] the legislative judgment that 'the quality of administrative decisionmaking would be seriously undermined if agencies were forced to operate in a fishbowl because the full and frank exchange of ideas on legal or policy matters would be impossible.'") (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977) (internal quotation marks omitted)).

Here, DOJ properly invoked Exemption 5 to withhold 14 uncertified draft versions of the OGE-278 financial disclosure forms. These draft forms are deliberative in that they were shared within DOJ for review and input, and to elicit information and edits from DOJ staff in the Departmental Ethics Office ("DEO"), regarding how to accurately complete the forms under the applicable statute, regulations, and guidance. *See* Shaw Decl. ¶ 12. Also, the drafts are predecisional because they were prepared before DEO, in consultation with Mr. Whitaker and the Office of the Attorney General ("OAG"), determined the final contents of the reports and prior to the certification of the reports. *Id.*

Consistent with DEO's review process, the draft reports highlight input from Mr. Whitaker and DOJ staff that indicate whether the personal financial information included in the report is accurate and appropriately included in the reports. *Id.* ¶ 13. All changes, additions, or

subtractions DEO made to this information was based on internal deliberations and consultations with Mr. Whitaker and the OAG regarding ethics requirements relating to public disclosure of financial information. *Id.* As such, each draft report reflects the agency's deliberations, with the confirmation of Mr. Whitaker for accuracy, regarding the decision-making process as to what information was required to be included in the reports. *Id.* Such information is necessarily predecisional and also reflect the "'give-and-take of the consultative process,'" *McKinley v. FDIC*, 744 F. Supp. 2d, 128, 138 (D.D.C. 2010).

Moreover, release of draft reports would harm the DOJ's deliberative process by chilling the free and open communications necessary for DOJ employees to freely obtain information from each other and would "'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (citation omitted). If pre-decisional drafts of public financial disclosure reports are routinely released to the public, federal government employees would be much more cautious and limited in their communications with each other. *Id.* ¶ 14. This lack of candor would seriously impair the government's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. *Id.* And, according to the declaration of Cynthia Shaw, the Director of DOJ's ethics office (*i.e.*, DEO), such disclosure would "discourage the development of more accurate and responsive public financial disclosure reports, thus defeating their purpose which is to present an accurate description of filers' assets and potential conflicts of interest." *Id.* Indeed, "[t]he accuracy of these reports is one of the foundations of the executive branch ethics program. Ethics officials use these reports to address conflicts of interest so that the public can have confidence that officials are not participating in matters in which they have financial or personal interests." *Id.* And, "[i]f ethics officials are dissuaded from a free

exchange of information in the development of these reports, the federal ethics program is itself diminished." *Id.*

In sum, the internal policy-related considerations featured by the draft reports are at the very heart of the deliberative-process privilege, as disclosing them would stifle candid discussions about matters at the core of DOJ's ethical obligations. *See Coastal States*, 617 F.2d at 866 (noting that the deliberative-process privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency").

## II. The Department Properly Withheld Personal Financial Information under Exemption 6.

Exemption 6 serves to protect personal privacy, permitting an agency to withhold "personnel and medical files and similar files the disclosure of which would clearly constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The catchall provision "similar files" includes any "[g]overnment records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see also Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").

The D.C. Circuit has explained that courts "follow a two-step process when considering withholdings or redactions under Exemption 6." *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review* ("*AILA*"), 830 F.3d 667, 673 (D.C. Cir. 2016). Once the records at issue are determined to be "similar files," 5 U.S.C. § 552(b)(6), courts must take a second step "by considering the significance of the privacy interest at stake," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991). This, in turn, requires "another two-step process" to determine first whether

"'disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest,'" *AILA*, 830 F.3d at 673-74 (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002)). "If no significant privacy interest is implicated . . . FOIA demands disclosure." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). If a substantial privacy interest does exist, such finding "does not conclude the inquiry; it only moves it along to the point where we can 'address the question whether the public interest in disclosure outweighs the individual privacy concerns.'" *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008) (quoting *Norton*, 309 F.3d at 35); *AILA*, 830 F.3d at 674 (explaining that the second step is to "weigh the privacy interest at stake 'against the public interest in the release of the records'" (quoting *Norton*, 309 F.3d at 33)).

Congress did not intend the FOIA to facilitate "disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772-73 (1989) (quotations omitted). Thus, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Reporters Comm.*, 489 U.S. at 773). In the absence of any identified public interest of the sort the FOIA was intended to serve, the exemption must be upheld. *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

Here, DOJ applied Exemption 6 to the 14 uncertified draft versions of the OGE-278 financial disclosure forms, which contain financial information related to Mr. Whitaker and his

spouse.  As reflected in the Shaw Declaration and *Vaughn* Index, the draft forms contain a large amount of personal financial information pertaining to Mr. Whitaker and his spouse.  Each working version of the draft forms reflects details of changes and corrections made pursuant to internal discussions and shows what information was revised, added, or subtracted.  Shaw Decl. ¶ 18.  This is the sort of personal financial information that has traditionally been held to be private.  *Atkinson v. FDIC*, Civ. A. No. 79-1113, 1980 WL 355660, at *3 (D.D.C. Feb. 13, 1980); *see Public Citizen, Inc. v. Resolution Trust Corp.*, Civ. A. No. 92-0010, 1993 WL 1617868, at *3 (D.D.C. Mar. 19, 1993) ("an individual possesses a substantial privacy interest in material about their financial status").

The Ethics in Government Act of 1978, 5 U.S.C. App. 4 § 101 *et seq.*, requires individuals occupying certain senior positions like Mr. Whitaker to file public financial disclosure forms, and those forms are made publicly available.  *See* 5 U.S.C. App. § 105; 5 C.F.R. § 2634.603(c).  Therefore, the public already has access to the final certified OGE-278 reports in accordance with the process established by the Office of Government Ethics ("OGE") consistent with the applicable statute and regulations.

The burden is on Plaintiffs to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests.  *See, e.g., Carter v. Dep't of Commerce*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. DOD*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Office of the Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." (citing *Favish*, 541 U.S at 172)).  Here there is no countervailing public interest that would be served by the disclosure of Mr. Whitaker's personal financial information that differs from the public reports.  *Id.*; *see Am.*

*Fed'n of Gov't Emps., Local 812 v. Broadcasting Bd. of Governors*, 711 F. Supp. 2d 139, 156 (D.D.C. 2010) (upholding redaction of names and other information relating to another individual pursuant to Exemption 6); *Govt. Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010) (concluding that agency properly redacted personal email addresses of applicants for board positions because "releasing their email addresses serves no public interest because these email addresses would not reveal 'what the government is up to'"). Indeed, courts have held that "[w]hile there may be some public interest in obtaining the identifying information of the Federal employees at issue, disclosure would not shed any light on the workings of [an agency]." *Canaday v. U.S. Citizenship & Immigration Servs.*, 545 F. Supp. 2d 113, 118 (D.D.C. 2008). In light of the public certified reports, the release of any different information contained in the draft reports would not materially increase the public's understanding of the operation or activities of DOJ. It would, moreover, present a potentially inaccurate picture of Mr. Whitaker's assets and potential conflicts of interest. Shaw Decl. ¶ 18. Accordingly, DOJ determined that there is a strong privacy interest when filers like Mr. Whitaker provide detailed financial information to the ethics office in reliance on the fact that the ethics office will review and assist in finalizing the report prior to certification. Shaw Decl. ¶ 16.

In light of the above, disclosing the draft forms, which contain details regarding Mr. Whitaker's finances and the changes that were made to the report prior to finalization, would constitute an unwarranted invasion of the privacy interests of Mr. Whitaker and his spouse. *Id.* ¶ 18. Accordingly, DOJ correctly concluded that the privacy interests outweighs any public interest in disclosure of this information. *See Conservation Force v. Jewell*, 66 F. Supp.3d 46, 67 (D.D.C. 2014) ("It has long been held that personal data and information can be redacted

from documents produced under the FOIA in the interest of privacy.") (collecting additional cases).

### III.     *No Reasonably Segregable Information May Be Released.*

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b).  Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, as demonstrated by the Shaw Declaration and the associated *Vaughn* index, DOJ examined and processed all of the records responsive to BuzzFeed's request and determined that no non-exempt information in the draft reports could be reasonably segregated for production to BuzzFeed.  SOMF ¶ 16.  After carefully reviewing the draft reports, DOJ concluded that there is no way to withhold the portions of the draft reports that differ from the final report without revealing the specific items that were changed.  *See* Shaw Decl. ¶ 19.  Indeed, the placement of a redaction or the fact that information was missing from a draft report would convey the precise deliberations or privacy-protected information.  *Id.*  Therefore, there is no reasonably segregable

15

information that may be released that would not reveal exempt information and DOJ is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant should be granted summary judgment.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar. No. 472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

By:   /s/   *Christopher Hair*
CHRISTOPHER HAIR, PA Bar No. 306656
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541
christopher.hair@usdoj.gov

*Counsel for Defendant*