**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF D.C.**

| | |
|---|---|
| BUZZFEED INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cv-70 (TNM) |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |

**PLAINITIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

This case boils down to a dispute over how to characterize the ethics disclosure process at issue. DOJ, who bears the burden of proving its exemption claims, asserts that the process is akin to a back-and-forth deliberation among government employees about ethics disclosure policies. But that characterization has no support in the record. Rather, each time Mr. Whitaker made a submission, it was necessarily with the understanding that if he—the Acting Attorney General of the United States, and previously Chief of Staff to the Attorney General—had complied with applicable law, the information would be certified and made public. And, each time DEO found that Mr. Whitaker did not comply with his legal obligations and required that he make revisions, DEO undertook a final action on that submission, not any "deliberation."

Indeed, it is impossible to reconcile DOJ's characterization of the process as one of deliberation with DEO's failure to "deliberate" with Mr. Whitaker about his New Entrant submission as Chief of Staff until he made his Annual Report a year later. *See* Dkt. # 20-1 at ¶ 4. Nor has DOJ proven any privacy interest in these submissions either, given that if Mr. Whitaker, while sitting at the apex of the DOJ, had complied with the law, every piece of information he submitted would have been certified and released to the public. And even if there was a substantial privacy interest, which there is not, the public's right to know what both DEO and

Mr. Whitaker were up to with regard to these important disclosures outweighs that privacy interest. As a result, the Court should grant summary judgment for Plaintiff.

## I. ARGUMENT

### A. The Submissions Are Not Deliberative and DOJ Has Not Proven Foreseeable Harm

For multiple reasons, DOJ has not proven that the submissions are protected by the deliberative process exemption.

First, there simply are no government deliberations to be found in Mr. Whitaker's various efforts to comply with his legal obligations. Rather, DOJ resorts to Orwellian verbal gymnastics that sound "deliberative" but clearly are not. Dkt. # 21 at 2 ("The Deliberative-Process Privilege Applies to the Draft Forms Because They Represent Steps in the Administrative Process Toward Crafting the Agency's Policies on Public Disclosures."). While DOJ argues that these various failed attempts at compliance would reveal what changed from submission to submission, all they would reveal is a series of DEO final compliance determinations in response to each attempt. Final decisions are not subject to the exemption. *E.g. Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 603 (D.C. Cir. 2001). And as BuzzFeed has explained, any back-and-forth emails between DEO officials about how to respond to Mr. Whitaker are outside the scope of this case, assuming they are even policy deliberations in the first place.

Second, DOJ claims that the submissions were used to facilitate discussions between DEO and Mr. Whitaker. Dkt. # 17-4 at ¶ 10; Dkt. # 20-1 at ¶ 6 (explaining process at issue as one in which Mr. Whitaker provided information and DEO provided feedback on what greater or lesser information was "needed" before the submissions could be certified). Mr. Whitaker obviously played no role in the development of any DEO policies or decisions on how to implement it as to his own submissions, and DOJ cites no case law applying deliberative process

- 3 -

to discussions between government officials and the people subject to government policies and regulations.  Indeed, by DOJ's logic, the IRS could claim the deliberative process exemption over discussions with a taxpayer about the legal compliance of a tax return or guidance on a future return.  That interpretation would stand the exemption on its head and should be rejected.

Third, DOJ relies heavily on its assertion that the "existence of an administrative process here is undeniable."  Dkt. # 21 at 3.  Be that as it may, the question is the *role* that Mr. Whitaker's submissions played in that administrative process. The only such "role" was as the subject matter of the supposed deliberations, not the opinions expressed by government officials in the course of a policy deliberation.  By DOJ's logic, the deliberative process exemption would swallow up everything touched by the government where any discussion occurred, and case law does not allow such broad interpretations of FOIA exemptions.

Fourth, DOJ argues that "Plaintiff fails to cite any law supporting the proposition that each and every draft is required by law to be submitted, rather than the final, certified version." Dkt. # 21 at 5.  But under the applicable regulations, it is DEO that decides when a submission can be certified, and nothing in those regulations or otherwise characterize these submissions as "drafts."  And there is no dispute that *all* of these versions were submitted for DEO to decide whether they would be certified anyway.

Fifth, DOJ claims that Mr. Whitaker's various attempts at legal compliance must be kept secret so that "the public receives only the most complete and accurate reports available."  Dkt. # 21 at 4.  One would expect that the Chief of Staff to the Attorney General and Acting Attorney General could do that the first time, but understanding his apparent failure to do so, and why government resources had to be spent over multiple iterations to ensure he satisfied his legal

obligations, are exactly the kind of information the release of which is contemplated by FOIA, as discussed with regard to public interest below.

Finally, even if DOJ established the requirements of Exemption 5, it must also prove a foreseeable harm to the agency from the release of the information. *See e.g. Rosenberg v. DOD*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018) (quoting *Ecological Rights Found. v. FEMA*, No. 16-cv-05254-MEJ, 2017 WL 5972702, at *7 (N.D. Cal. Nov. 30, 2017). DOJ claims that disclosure of the submissions may cause the public to draw "improper inferences" about information Mr. Whitaker reported. Dkt. #20-1 at ¶ 8. As a result, according to DOJ, filers may be less willing to correct their forms in the future. *Id.* Yet neither of these concerns has any bearing on DEO's internal deliberative process, or its ability to conduct "candid discussions," which is what Exemption 5 is intended to protect. *See Rosenberg*, 342 F. Supp. 3d at 78. Indeed, DOJ makes no showing of how DEO's internal communications would be harmed. *See* Dkt. #20-1 at ¶ 8. Furthermore, any fear that filers may be unwilling to correct inaccurate information in the future is wholly unfounded: filers are required by law to report this information and report it correctly. *See Public Financial Disclosure Guide: OGE Form 278e*, Office of Government Ethics Website, https://www.oge.gov/Web/278eGuide.nsf/Chapters/OGE%20Form%20278e?opendocument (last accessed Aug. 7, 2019).

DOJ has not proven its deliberative process claims.

**B.    DOJ Has Not Proven Any Privacy Interests in Submissions Intended for Public Disclosure That Outweigh the Public Interest in Disclosure**

In defending its Exemption 6 claims, DOJ continues to argue that the "updated" submissions are drafts, as though incanting this characterization prohibits their release under Exemption 6. *See Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 14 (D.D.C. 2004). To the contrary, Exemption 6 concerns "a clearly unwarranted invasion of personal privacy," not

the draft status of the record.  5 U.S.C. § 552(b)(6).  And as discussed above, these submissions were not drafts, but submissions that the submitter knew, as a condition of the privilege of his government employment, would be made public if he complied with applicable law governing the submissions.  Because there is no substantial privacy interest, the Court need not go any further.  *E.g. Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) ("The balancing analysis for FOIA Exemption 6 requires that we first determine whether disclosure of the files 'would compromise a substantial, as opposed to de minimis, privacy interest,' because '[i]f no significant privacy interest is implicated . . . FOIA demands disclosure.'") (*quoting Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).  And even if there was a privacy interest in the information that was not contained in Mr. Whitaker's final successful attempt to comply with the law (*i.e.*, extraneous information that was not required), only that information should be redacted, not the information that was ultimately disclosed.

Although there is no privacy interest in information prepared and submitted for eventual public disclosure, even if there were, "a privacy interest may be substantial—more than de minimis—and yet be insufficient to overcome the public interest in disclosure." *Multi Ag Media*, 515 F.3d at 1230-33.  While DOJ takes issue with the length of Plaintiff's straightforward public interest argument, Dkt. # 21 at 9, DOJ does not dispute that the materials would shed light on the way that DEO interprets and enforces the applicable regulations (a year after the fact in Mr. Whitaker's case here, *see* Dkt. # 20-1 at ¶ 4), which is the very paradigm of "what the government is up to."  *E.g., Showing Animals Respect & Kindness v. Dep't of the Interior*, 730 F. Supp. 2d 180, 196 (D.D.C. 2010).

Moreover, in addition to that public interest, "the public interest in disclosure under FOIA is not limited to the agency processing the request for records; the public has a right to

- 6 -

know what their 'government' is up to, not just what a particular agency is up to." *Id.* Thus, there is also a public interest in knowing what Mr. Whitaker—the acting highest-ranking law enforcement official in the country at the time—was "up to" as he attempted to comply with his own legal obligations.

## II.     CONCLUSION

For these reasons, the Court should grant summary judgment for Plaintiff.

RESPECTFULLY SUBMITTED,

*Matthew V. Topic*

_____

Attorneys for Plaintiff

Matthew Topic
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com
DC Bar No. IL0037

## CERTIFICATE OF SERVICE

I, Matthew Topic, an attorney, hereby certify that on August 9, 2019, I caused the foregoing PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Matthew V. Topic*