|  |  |
|---|---|
| **BUZZFEED, INC.**, | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-00070 (TNM) |
| **U.S. DEPARTMENT OF JUSTICE**, | |
| Defendant. | |

**MEMORANDUM OPINION**

When Matthew Whitaker was the Attorney General's Chief of Staff and then the Acting Attorney General, he had to submit financial disclosure forms with the Office of Government Ethics. Like those of other executive agency filers, Whitaker's forms are a matter of public record under the Ethics in Government Act of 1978. *See* 5 U.S.C. App. 4 § 105. But Whitaker's forms underwent several rounds of revision before final approval, and those drafts were never disclosed. BuzzFeed believes they should be, so it sued the Department of Justice to force their disclosure under the Freedom of Information Act.

DOJ maintains that all draft versions of Whitaker's forms are exempt from FOIA release. DOJ claims that the forms are privileged because they were revised through a "deliberative process," and that they contain private financial information. After reviewing the parties' cross-motions for summary judgment, the Court is unpersuaded by DOJ's "deliberative process" arguments. More, though the Court agrees that portions of the forms contain private financial information, some portions can be released without infringing Whitaker's privacy. For the following reasons, the Court will grant summary judgment in part and deny it in part for each party.

## I.     BACKGROUND

In early November 2018, Jeff Sessions announced his resignation as Attorney General of the United States and the President announced that Matthew Whitaker, then the DOJ Chief of Staff, would become the Acting Attorney General.  Compl. ¶¶ 6–9.  About two weeks later, DOJ publicly released Whitaker's New Entrant and Annual Public Financial Disclosure Reports, submitted on Office of Government Ethics ("OGE") Form 278e.  *Id.* ¶ 32.  Both reports were revised five times before they were finished and made public.  *Id.* ¶ 33.  The day after their public release, a BuzzFeed reporter sent DOJ a FOIA request for all "original and amended versions" of the forms from the previous year.  *Id.* ¶ 34.  After some fruitless back-and-forth with DOJ, BuzzFeed filed this lawsuit seeking the draft reports.  *See id*. ¶¶ 35–56.

## II.     LEGAL STANDARDS

Congress enacted FOIA to promote governmental transparency.  *See* 5 U.S.C. § 552; *Judicial Watch, Inc. v. U.S. DOD*, 913 F.3d 1106, 1108 (D.C. Cir. 2019).  FOIA creates "a statutory right of public access to documents and records held by federal agencies."  *Stein v. U.S. SEC*, 266 F. Supp. 3d 326, 335 (D.D.C. 2017) (citation omitted).  The Supreme Court has described FOIA as "a means for citizens to know what their Government is up to" and "a structural necessity in a real democracy."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (cleaned up).

At the same time, Congress also recognized that "legitimate governmental and private interests could be harmed by release of certain types of information," *FBI v. Abramson*, 456 U.S. 615, 621 (1982), which is why federal agencies must "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions," *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365–66 (D.C. Cir. 2008); *see* 5 U.S.C. § 552(b).

Those nine exemptions "are explicitly made exclusive and must be narrowly construed." *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (cleaned up).

The "vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

If a government agency withholds records, in whole or in part, it "bears the burden of proving the applicability of claimed exemptions." *Am. Civ. Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). All "underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted). The agency may submit affidavits or declarations and, if necessary, a *Vaughn* Index that lists "in detail which portions of the documents are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 848 F.2d 820, 827 (D.C. Cir. 1973).

The Court may grant summary judgment "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (citation omitted). If the agency's affidavit meets these criteria, "then summary judgment is warranted on the basis of the affidavit alone." *Am. Civ. Liberties Union*, 628 F.3d at 619 (citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* (cleaned up).

## III. ANALYSIS

The Supreme Court has repeatedly explained "the basic policy that disclosure, not secrecy, is the dominant objective" of FOIA. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *Dep't of Air Force v. Rose,* 425 U.S. 352, 361 (1976)). "Important interests are served by [FOIA's] exemptions," which are "as much a part of [its] purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up). But in keeping with FOIA's "goal of broad disclosure, these exemptions have been consistently given a narrow compass." *U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 151 (1989).

The only issue here is DOJ's withholding of 14 versions—seven each of the New Entrant and Annual reports—of Matthew Whitaker's draft OGE Form 278e. *See* Def.'s Mot. for Summ. J. ("Def.'s Mot.") 6, ECF No. 17-1. DOJ argues that the withholdings are justified under Exemption 5's deliberative process privilege and Exemption 6's personal privacy protections. *See id*. DOJ also claims it is impossible to segregate exempt and non-exempt portions of the draft forms "without revealing the specific items that were changed." *Id.* at 15. BuzzFeed disagrees. *See* Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot."), ECF No. 18. The Court addresses each exemption below. Ultimately, the Court agrees in part with both parties.

### A. Exemption 5 is Inapplicable Because the Drafts Reveal No DOJ Deliberations

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Exemption 5 incorporates the privileges that the Government may claim when litigating against a private party." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (citation omitted). In other words, it stands for the idea that

"[t]he public is entitled to all such memoranda or letters that a private party could discover in litigation with the agency." *EPA v. Mink*, 410 U.S. 73, 86 (1973) (citations omitted).

The only Exemption 5 privilege that DOJ claims here is the deliberative process privilege, *see* Def.'s Mot. at 8–11, which protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," *Abtew*, 808 F.3d at 898 (citation omitted). And the privilege is not strictly limited to opinions. It is also "broad enough to protect those facts intertwined with the opinions or tending to reveal the deliberative process." *Brinton v. Dep't of State*, 636 F.2d 600, 606 (D.C. Cir. 1980).

"Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The privilege reflects the policy that "officials should be judged by what they decided, not for matters they considered before making up their minds." *Abtew*, 808 F.3d at 898 (citation omitted). In this way it "protects agencies from being 'forced to operate in a fishbowl.'" *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014) (quoting *Mink,* 410 U.S. at 87).

To qualify for the deliberative process privilege, the draft versions of Whitaker's OGE forms must have been both "pre-decisional" and "deliberative." *See Abtew*, 808 F.3d at 898. BuzzFeed argues that because the forms themselves "could not possibly have made any recommendations or expressed any opinions, they are not deliberative." Pl.'s Cross-Mot. at 4. The Court agrees. After Whitaker submitted his OGE forms to DOJ's ethics officials, they shared the forms among themselves and with Whitaker several times before final approval. *See*

Shaw Decl. ¶¶ 10–12, ECF No. 17-4. The ethics officials followed this process to "accurately complete the [forms] under the applicable statute, regulations, and guidance." *Id.* ¶ 12. But DOJ has not carried its burden of establishing that the draft forms themselves reflect the deliberative process, so the exemption does not apply. *See Coastal States*, 617 F.2d at 868 ("It is . . . . clear that the agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process"); *Abtew*, 808 F.3d at 898.

### 1. BuzzFeed Does Not Contest that the Draft Forms are "Pre-Decisional"

As the term itself suggests, "pre-decisional" means that a document "precedes, in temporal sequence, the decision to which it relates." *Senate of P.R. v. Dep't of Justice,* 823 F.2d 574, 585 (D.C. Cir. 1987) (cleaned up). DOJ claims that the 14 "uncertified versions" of the OGE forms are pre-decisional "because they were prepared before determining the final contents of the report." Shaw Decl. ¶ 12. BuzzFeed does not argue otherwise. *See* Pl.'s Cross-Mot. at 3–6 (focusing argument on lack of agency deliberation); Pl.'s Reply at 1–4 (same).

In any event, this case hinges on the second prong, not the first. A document is pre-decisional if it is "generated before the adoption of an *agency policy*." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (emphasis added). And communications or documents that simply "promulgate or implement an established policy of an agency" are not pre-decisional. *See Brinton v. Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980). So we turn to that question: whether the draft forms express DOJ's policy opinions. As it turns out, they do not.

### 2. The Revisions Do Not Express Policy Opinions

The draft forms fail the "deliberative" requirement, because they do not reflect "recommendations or express[] opinions on legal or policy matters." *See Vaughn v. Rosen (Vaughn II)*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975).

DOJ maintains that the draft forms "are deliberative in that they were shared within DOJ for review and input, and to elicit information and edits." Shaw Decl. ¶ 12. It claims that each draft reflects agency give-and-take "as to what information was required to be included in the reports." *Id.* ¶ 13. In DOJ's view, that process "effectuate[d] DOJ's policy on public disclosure." Def.'s Opp'n at 3.

But it is not clear that the ethics officials' revisions had anything to do with the "give-and-take of the consultative process" that leads to policy. *See Coastal States*, 617 F.2d at 866. DOJ was not formulating policy at all. Its ethics officials were merely trying to assist in the accurate completion of Whitaker's financial disclosure forms in compliance with the Ethics in Government Act and OGE policy. *See* 5 U.S.C. App. 4 §§ 101–111; 5 C.F.R. Part 2634 (2019). DOJ's attempts to recast the process as the formulation of an internal policy, *see* Def.'s Opp'n at 3, contradicts its own stated objectives, *see* Shaw Decl. ¶ 13 (describing review "in light of the ethics requirements relating to public disclosure of financial information").

More, even if DOJ's internal discussions were deliberative, BuzzFeed has not asked for deliberative records. *See* Pl.'s Cross-Mot. at 4. BuzzFeed disclaims any interest in the internal emails to which the forms were attached or other documented communications, asking only for Whitaker's draft forms themselves. *See id.* ("While it is certainly possible that in *response* to faulty submissions, some deliberations occurred . . . BuzzFeed has not sought those communications") (emphasis in original). To be clear, the draft forms at issue here are fill-in-the blank standardized forms that seek purely factual information about the filer's financial situation.[1] It is the emails that presumably contain the back-and-forth of questions and advice

---

[1] *See* USOGE, *Public Financial Disclosure Guide*, https://www.oge.gov/Web/278eGuide.nsf (last visited Nov. 18, 2019).

within the ethics office and between the ethics office and Whitaker that the deliberative process privilege arguably protects.

DOJ counters that the iterative drafts convey the nature of its deliberations. Relying mainly on *ViroPharma, Inc. v. U.S. Department of Health & Human Services*, 839 F. Supp. 2d 184 (D.D.C. 2012), DOJ argues that "the drafts, collectively, represent deliberative steps in the procedural timeline; each . . . in furtherance of the agency's policy of fair and accurate disclosure in final certification." Def.'s Opp'n at 7 (citing Shaw Decl. ¶¶ 13–14). DOJ's reliance is misplaced. In *ViroPharma*, the Food and Drug Administration ("FDA") withheld draft documents that led to a change in policy about testing requirements for a specific type of drugs. 839 F. Supp. 2d at 187. Even though it withheld purely factual material, the FDA's choices about "what factual material and prior final agency opinions to include or remove" reflected the deliberative process. *See id*. at 193. Judge Friedman found that disclosure of the factual material would reveal the FDA's judgments leading to the rule change, which justified a departure from the "longstanding distinction between factual and deliberative materials under Exemption 5." *See id*. (citing *Mink*, 410 U.S. at 79) (other citation omitted).

As the D.C. Circuit has explained, "the simple test" adopted in *Mink* "that factual material must be disclosed but advisory material, containing opinions and recommendations, may be withheld," can resolve many, if not "the great majority of cases[.]" *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977). It is only in exceptional circumstances that "disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted." *Id*.

This case is one of the many, not the few. Unlike the records in *ViroPharma* and other exceptional cases, Whitaker's draft forms do not bear the mark of the deliberative process. *See,*

*e.g., ViroPharma*, 839 F. Supp. 2d at 192–3 ("factual content and recitations of past final agency decisions" contained in drafts); *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 68, 71 (D.C. Cir. 1974) (finding agency administrator's tasking of assistants to prepare factual summary for "a complex decision" akin "to a judge's use of his law clerks;" probing the summaries "would be the same as probing the decision-making process itself"); *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987) ("disclosure of editorial judgments—for example, decisions to insert or delete material or to change a draft's focus of emphasis—would stifle the creative thinking and candid exchange of ideas" in Air Force histories); *Goodrich Corp. v. E.P.A.*, 593 F. Supp. 2d 184, 189 (D.D.C. 2009) (granting withholding of EPA model because "even if the data plugged into the model is itself purely factual, the selection and calibration of data is part of the deliberative process").

DOJ's claims find no better support in the cases it cites. *See* Def.'s Opp'n at 2. For example, DOJ cites an opinion by Chief Judge Howell for the proposition that draft documents "are typically considered deliberative." *See id.* (citing *Hardy v. Bur. of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 173 (D.D.C. 2017)) (cleaned up). True. But only sentences before, *Hardy* highlighted the very distinction here. *See* 243 F. Supp. 3d at 173. Unlike protected documents, which "bear on the formulation or exercise of agency policy-oriented judgment," Chief Judge Howell found that Exemption 5 did not apply to documents "over which the agency has no significant discretion." *See id.* (citing *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435–36 (D.C. Cir. 1992)).

By its own admission, DOJ had no discretion at all. It could only certify Whitaker's forms when they "correctly and completely" represented his financial information as required by law. *See* Shaw Supp. Decl. ¶ 6. And the mere collection of facts does not constitute a privileged

decision. "Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material. If this were not so, every factual report would be protected as a part of the deliberative process." *Playboy Enterprises, Inc. v. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982).

Instead, Whitaker's draft forms contain "raw facts with informational value in their own rights," not those that "serve primarily to reveal the 'evaluative' process by which different members of the decision-making chain arrive at their conclusions and what those pre-decisional conclusions are." *Mead Data Cent.*, 575 F.2d at 935 (cleaned up); *see also Playboy Enterprises*, 677 F.2d at 936 (noting report "prepared only to inform the Attorney General of facts which he in turn would make available to members of Congress"); *Citizens for Respons. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 159 (D.D.C. 2009) (finding factual material "does not reflect the personal opinions of the writer, nor is it so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication"). Simply put, there is no "intertwining" of facts and opinions here. *Compare Brinton*, 636 F.2d at 606 (holding the privilege protects "those facts intertwined with the opinions or tending to reveal the deliberative process"). The drafts only contain factual information. Whatever opinions were involved are safely segregated away in the emails that Buzzfeed has not sought.

For the same reason, DOJ's concerns about the chilling effect of disclosure are also unfounded and unconvincing. *See* Def.'s Opp'n at 2. While Exemption 5 recognizes the importance of "candid discussion within the agency," *Access Reports*, 926 F.2d at 1195, there is no risk that disclosure of draft financial disclosure forms will "chill all future editing processes . . . out of fear of public release," *see* Def.'s Opp'n at 2. Indeed, the forms at issue contain no

discussions at all, candid or otherwise. More, as BuzzFeed correctly notes, "filers are required by law to report this information and report it correctly," meaning that future filers and the ethics officials who review their submissions will continue to revise filings until they meet their legal obligations. See Pl.'s Reply 4, ECF No. 23 (citation omitted).

In sum, the 14 draft versions of Whitaker's OGE Form 278e do not reflect "deliberative" material, so Exemption 5 does not apply.

**B. DOJ Properly Withheld Private Financial Information under Exemption 6**

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Court must first determine whether the information in Whitaker's OGE forms is "contained in personnel, medical, or 'similar' files." *Wash. Post Co. v. U.S. Dep't of Health & Human Serv.* ("*Wash. Post (HHS)*"), 690 F.2d 252, 260 (D.C. Cir. 1982). If it is, the Court then assesses whether disclosure would lead to "a clearly unwarranted invasion of personal privacy." *See id.*; 5 U.S.C. § 552(b)(6). This second step requires a balancing test, weighing "the interest of the general public in disclosure" against Whitaker's privacy rights. *See Wash. Post (HHS)*, 690 F.2d at 258, 260.

The question here is closer than in the Exemption 5 context. But because Whitaker's financial information is private and the public's interests are minimal, Exemption 6 protects Whitaker's undisclosed financial information.

**1. Whitaker's Financial Information is Private**

The Supreme Court has held that Congress intended a "broad" meaning for Exemption 6, not merely "a narrow class of files containing only a discrete kind of personal information." *U.S. Dep't of State v. Wash. Post Co.* ("*Wash. Post (DOS)*"), 456 U.S. 595, 600, 602 (1982).

Classifying the type of file is unimportant: "All information which 'applies to a particular individual' is covered by Exemption 6, regardless of the type of file in which it is contained." *Wash. Post (HHS)*, 690 F.2d at 260 (quoting *Wash. Post (DOS)*, 456 U.S. at 602).

Courts have consistently found financial information to meet the threshold privacy requirement. *See, e.g.*, *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1056 (D.C. Cir. 2009). Here, the categories of information in Whitaker's draft forms convey the intimate information about his financial affairs: employment positions; assets, income, and retirement accounts; spouse's employment assets and income; liabilities; and other details.[2] The financial information listed in the forms is intensely personal and meets the threshold privacy requirement. *See Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (requiring "a substantial, as opposed to de minimis, privacy interest"). Indeed, but for the Ethics in Government Act's requirement of financial self-disclosure, DOJ would not have had access to this personal information at all.

### 2. Whitaker's Privacy Rights Outweigh the Public's Minimal Interests

The next step is to determine whether the public has an interest in Whitaker's financial information. Because Whitaker's privacy interests meet the threshold requirement, BuzzFeed must establish that it has a significant interest in the information. *See Martin v. DOJ*, 488 F.3d 446, 458 (D.C. Cir. 2007) ("In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest.") (citation omitted). The D.C. Circuit

---

[2] *See* USOGE, *OGE Form 278e (2019 Excel version)*, https://www.oge.gov/web/oge.nsf/Resources/OGE+Form+278e+(2019+Excel+version) (last visited Nov. 18, 2019).

teaches that "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

BuzzFeed argues that "the materials would shed light on the way [DOJ] interprets and enforces the applicable regulations," and that there is "a public interest in knowing what Mr. Whitaker . . . was 'up to' as he attempted to comply with his own legal obligations." Pl.'s Reply at 5–6 (citation omitted). BuzzFeed concedes, however, that the public's interest in Whitaker's financial information might extend only to "the information that was ultimately disclosed" in the final public versions, and not to "extraneous information that was not required." *See id*. at 6. The Court agrees with BuzzFeed that the public has a significant interest in the information in the final versions of Whitaker's forms. *See id.* But as BuzzFeed concedes, that interest diminishes for the financial information found only in the draft versions, to no more than "information for its own sake." *See id*.; *Martin*, 488 F.3d at 458.

On the other hand, Whitaker's privacy interest is at its peak here. DOJ points out that Whitaker's forms contain personal details about "his assets [and] former clients." *See* Shaw Supp. Decl. ¶ 5. DOJ also deleted from the drafts some information Whitaker provided because it "was not required for the report." *See id*. ¶ 6. Considering that DOJ's ethics officials laboriously scrutinized Whitaker's financial information to ensure his final forms included all necessary disclosures, Whitaker's privacy interest in the undisclosed information far exceeds the public's virtually non-existent countervailing interest. *See Horner*, 879 F.2d at 879.

In any event, Congress provided much of this balancing when it enacted the Ethics in Government Act. *See* 5 U.S.C. App. 4 § 102 ("Contents of reports"). For Whitaker and the other senior officials covered by the Act, financial details that fall within the Act's disclosure requirements are, by definition, no longer private. *See id*.; *id*. § 101 ("Persons required to file").

At the same time, Congress's determination that other financial data need not be self-disclosed spoke just as clearly about the financial details that should *remain private*. *See id*. § 102. And Buzzfeed should not be able to use FOIA to do an end-run around the disclosure lines Congress established in the Ethics in Government Act. *Cf. Judicial Watch v. U.S. Secret Serv.*, 726 F.3d 208, 231 (D.C. Cir. 2013) ("Congress did not intend to authorize FOIA requesters to obtain indirectly from the Secret Service information that it had expressly barred requesters from obtaining directly from the President.").

These bright lines also encourage candor when filers entrust their financial information with OGE and the ethics officials who will help determine what must be reported. *See id*. § 103 (requiring filers to submit their reports through designated agency ethics officials). Filers should be confident they can be transparent with their ethics officials about their financial information without fearing that data not required by the Ethics in Government Act may nonetheless be disclosable under FOIA.

### C. DOJ Must Disclose all Segregable Information

The final question is what from the draft forms must DOJ disclose. FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). This means non-exempt portions "must be disclosed unless they are inextricably intertwined with exempt portions." *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999).

Here, there is no risk of "inextricable intertwinement" because the entries in the OGE

forms are no more than discrete cells in a spreadsheet.[3]  And because the Court found

Exemption 5 does not apply, the Court need not tarry long with DOJ's argument that "the

placement of a redaction or the fact that information was missing from a draft report would

convey the precise deliberations or privacy-protected information."  *See* Def.'s Mot. at 15.  Each

cell can be redacted if required, without affecting the unredacted portions of the document.

There are three ways the drafts and the final versions may differ.  First, DOJ noted upon

its initial review of Whitaker's forms "that more information was needed in order to create

complete reports."  Shaw Supp. Decl. ¶ 5.  Where Whitaker under-reported on a draft

submission, there is no justification for withholding the draft, because it is simply missing an

entry available in the final version.  He has no privacy interest in missing information.

Second, Whitaker may have reported an asset, position, liability, transaction, or other

entry that was modified in some way before the final version.  This appears to be the case with

the several versions of the drafts "only shared internally" within DOJ.  *See* Sec. Vaughn Index,

ECF No. 20-1.  Here again, there is no justification for withholding the drafts, because they

report the same underlying information in the final form but use different language or monetary

values.

The only circumstance that justifies a withholding is the third possibility: that Whitaker

over-reported on a draft submission by including information not required by the OGE filing

standards.  DOJ confirms that "some information provided by Mr. Whitaker was not required for

the report."  Shaw Supp. Decl. ¶ 6.  In those cases, as BuzzFeed has acknowledged, Whitaker's

---

[3]  This fact—obvious from the forms themselves—is made all the plainer by OGE's offering of a Microsoft Excel
version of Form 278e "for individuals who cannot file using an electronic financial disclosure system."  *See*
USOGE, *OGE Form 278e (2019 Excel version)*, https://www.oge.gov/web/oge.nsf/Resources/OGE+Form+278e+
(2019+Excel+version) (last visited Nov. 18, 2019).

privacy interest in the withheld financial information justifies a withholding under Exemption 6, and DOJ must redact the additional information from the draft forms.  *See* Pl.'s Reply at 5 ("only that information should be redacted, not the information that was ultimately disclosed").

These remaining withholdings will only apply to entries removed during the revision process because DOJ's ethics officials determined Whitaker did not have to disclose the information.  Otherwise, DOJ must release all information in the draft forms that corresponds to an entry in the final versions.

## IV.    CONCLUSION

For all these reasons, the Court will deny the Defendant Department of Justice's Motion for Summary Judgment as to the Exemption 5 withholdings, grant it in part and deny it in part as to the Exemption 6 withholdings, and deny it as to the segregability of the draft documents' contents.  Similarly, the Court will grant the Plaintiff BuzzFeed's Cross-Motion for Summary Judgment as to the Exemption 5 withholdings, grant it in part and deny it in part as to the Exemption 6 withholdings, and grant it as to segregability.  A separate Order will issue.

Dated: December 4, 2019                                        _____
                                                                         TREVOR N. McFADDEN, U.S.D.J.